Bryan K. Benard, 9023
HOLLAND & HART LLP
60 E. South Temple, Suite 2000
Salt Lake City, Utah 84111-1031
Telephone (801) 799-5800
Facsimile (801) 799-5700

*Attorneys for Defendant, Cross-Complainant
and Third-Party Plaintiff
Great-West Life and Annuity Ins. Co.*

---

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| UNIVERSITY OF UTAH, UNIVERSITY HEALTHCARE, | ) ) ) **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CROSS-CLAIM OF CABINETEC, INC. OR ALTERNATIVELY FOR SUMMARY JUDGMENT** |
| Plaintiff, | ) ) |
| v. | ) Civil No.  2:09-cv-37 ) |
| CABINETEC, INC., a Nevada Corporation, CABINETEC HEALTH AND DENTAL PLAN, an ERISA governed health plan, and GREAT-WEST LIFE AND ANNUITY INSURANCE COMPANY, a Colorado corporation | ) Judge: Clark Waddoups ) ) ) ) ) ) |
| Defendants. | ) ) ) |
| GREAT-WEST LIFE AND ANNUITY INSURANCE COMPANY, a Colorado corporation, | ) ) ) ) |
| Cross-Complainant and Third Party Plaintiff, | ) ) ) |
| v. | ) ) |
| CABINETEC, INC., a Nevada Corporation, | ) |

| | |
|---|---|
| and CABINETEC HEALTH AND DENTAL PLAN, an ERISA governed health plan, | ) ) ) |
| | ) |
|      Cross-Complaint Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED RESOURCE NETWORKS, a Delaware corporation, and OPTUMHEALTH, INC., a Delaware corporation, | ) ) ) ) |
| | ) |
|      Third-Party Defendants. | ) |
| | ) |
| | ) |

Defendant, Cross-Complainant and Third-Party Plaintiff Great-West Life and Annuity Insurance Company ("Great-West"), through its counsel of record, Holland & Hart LLP, submits the following memorandum in support of its Motion to Dismiss the Cross-Claim of Defendants, Cross-Complaint Defendants, and Cross-Claimants CabineTec, Inc. and CabineTec Health and Dental Plan (collectively "CabineTec") or alternatively for Summary Judgment.

## I.    INTRODUCTION

This dispute arises out of medical benefits claims related to alleged services Plaintiff University of Utah, University Healthcare provided to an employee and plan member of CabineTec, under CabineTec's health and dental benefits plan (the "Plan"). CabineTec and Great-West entered into an administrative services agreement whereby Great-West provided claims administration services for CabineTec's self-funded Plan. That is, while Great-West processed claims, the payment of such claims and the obligation to pay such claims remained with CabineTec.

In February 2006, CabineTec terminated its agreement with Great-West, but did ask for additional "excess loss" coverage.  Great-West agreed to provide such coverage subject to proper payment by CabineTec.  CabineTec immediately defaulted and Great-West terminated the relationship and coverage, thereby ending any obligation on the part of Great-West with respect to claims administration and/or excess loss coverage.  Great-West then filed suit against CabineTec for breach of contract in Nevada state court for payments owed.  CabineTec confessed judgment without bringing any cross-claims.

As alleged by Plaintiff, it provided medical services to CabineTec's employee, Mitchell Baldwin, from March through May 2005.  However, the claims were not submitted to Great-West until the summer of 2006, after the time the CabineTec/Great-West agreement had been terminated.  Because the claims were untimely and Great-West's obligations under its agreement with CabineTec had expired, Great-West denied the claims.  This suit followed.

Now, CabineTec has raised claims for breach of contract, breach of fiduciary duty, and bad faith failure to settle or compromise against Great-West.  Each of these claims fails to sufficiently state a viable claim against Great-West and should be dismissed.

First, the state law claims for breach of fiduciary duty and bad faith failure to settle are preempted by ERISA and must therefore be dismissed.  Second, the doctrine of res judicata bars all three claims due to Great-West's prior Nevada action against CabineTec.  The dispute involves the same parties, the present claims asserted by CabineTec were compulsory counterclaims and could have been raised in the Nevada action, and CabineTec confessed judgment and admitted its failure to pay premiums as alleged in the Nevada claim by Great-West.  Third, when the Court views the alleged cross-claims in light of the actual contract

provisions at issue, each of CabineTec's claims fail as a matter of law, for the simple reason that

the allegations of wrongdoing by CabineTec are fatally undermined by the terms of the parties

agreement.  Consequently, the motion to dismiss should be granted in its entirety and

CabineTec's Cross-Claim dismissed.

## II.    STATEMENT OF FACTS

1.    Great-West is a Colorado corporation that performed claims administering

services for CabineTec pursuant to contract until the contract was terminated on February 28,

2006.  Affidavit of Dianna L. Sweet ("Sweet Aff.") ¶ 3.  CabineTec provided healthcare

coverage to its employees during the relevant time period alleged in the Amended Complaint

under the CabineTec Health and Dental Plan (the "Plan"), an ERISA covered health plan.  *Id.*;

Answer to Great-West's Cross Claim Against CabineTec and Cross Claim Against Great-West,

filed August 11, 2009 ("CabineTec's Cross-Claim") ¶¶ 5, 6, 7, 10-12, and 19.

2.    On or about March 10, 2004, CabineTec and Great-West entered into an

Administrative Services Agreement, including appendices A, C and D ("ASA").  Sweet Aff. ¶ 4;

CabineTec's Cross-Claim ¶ 5.  Attached as Exhibit A hereto is a true and correct copy of the

agreement.[1]  On that same date, Great-West processed CabineTec's Application for Excess Loss

Insurance, including an Excess Loss Insurance Policy with Riders D.1.2 and 6 ("Excess Loss

---

[1] The ASA was attached as Exhibit 1 to CabineTec's original Answer to Amended Complaint
and Cross Claim herein.  It is also attached as Exhibit A to Great-West's Answer to Amended
Complaint, Cross-Complaint against CabineTec, and Third-Party Complaint ("Great-West's
Cross-Complaint").

Policy"). Sweet Aff. ¶ 4; CabineTec's Cross-Claim ¶ 5. Attached as Exhibit B hereto is a true and correct copy of the application and policy.[2]

3. Pursuant to the relationship, Great-West provided administrative services to CabineTec's medical benefit plan as well as excess loss coverage to protect CabineTec against catastrophic claims so long as the relationship was in effect and CabineTec was upholding its obligations to Great-West. Sweet Aff. ¶ 5; CabineTec's Cross-Claim ¶¶ 5, 6, 7, 10-12, and 19.

4. The Summary Plan Description for CabineTec ("SPD") provides further details on the relationship and responsibilities of CabineTec and Great-West under the ASA and Excess Loss Policy. Sweet Aff. ¶ 6. Attached as Exhibit C hereto is a true and correct copy of the SPD.[3] CabineTec's medical benefit plan was self-funded and Great-West did not insure the plan. SPD, Exhibit C hereto, at 5-6.

5. Under the ASA and Excess Loss Policy, CabineTec or its designated employee was the fiduciary of the plan and the Plan Administrator as that term is defined. *See* ASA, Exhibit A hereto, at 1 (third recital). Great-West was a fiduciary only for the limited purpose of determining appeals. ASA, Exhibit A hereto, at 2 § 2.

6. On or about February 14, 2006, CabineTec informed Great-West that it was terminating the ASA and Excess Loss Policy with Great-West on February 28, 2006. Sweet Aff. ¶ 7. Attached as Exhibit D is a true and correct copy of the termination letter. CabineTec

---

[2] The Excess Loss Policy was attached as Exhibit 2 to CabineTec's original Answer to Amended Complaint and Cross Claim herein. It is also attached as Exhibit B to Great-West's Cross-Complaint.

[3] The SPD is attached as Exhibit D to Great-West's Cross-Complaint.

requested that Great-West provide terminal run-out of claims for services incurred prior to

March 1, 2006 but paid after termination.  Sweet Aff. ¶ 7.

7.      In a letter dated February 15, 2006, Great-West agreed to provide terminal run-out

protection but only if CabineTec made the required payments under the ASA and Excess Loss

Policy.  Sweet Aff. ¶ 8.  At that time Great-West reminded CabineTec that the contract required

CabineTec to "maintain and properly fund your current bank account during the fifteen (15)

month period, or until your maximum liability is reached . . . ."  Attached as Exhibit E is a true

and correct copy of Great-West's February 15, 2006 correspondence.

8.      CabineTec defaulted on its obligations to Great-West and failed to pay its

required terminal fees under the contract.  Sweet Aff. ¶ 9.  As a result, Great-West's obligations

under the ASA and Excess Loss Policy and to CabineTec immediately terminated and Great-

West had no continuing obligation to pay, process, or reinsure claims payable under CabineTec's

medical benefit plan.  *Id.*  Great-West informed CabineTec of the termination on April 18, 2006

and explained that CabineTec was indebted to Great-West in the amount of $31,991.12 for

administration fees previously incurred.  Sweet Aff. ¶ 9.  Attached as Exhibit F is a true and

correct copy of Great-West's April 18, 2006 correspondence.

9.      After CabineTec failed to make payment, Great-West instituted litigation to

collect the amounts due and filed a complaint in the District Court of Clark County, State of

Nevada.  Sweet Aff. ¶ 10.  Attached as Exhibit G is a true and correct copy of the filed complaint

(the "Nevada Complaint").  The Nevada Complaint alleged claims for breach of contract and

quantum meruit related to CabineTec's failure to pay premiums under the ASA and Excess Loss

Policy, and specifically for not paying post-termination premiums related to the Excess Loss

Policy.  *See* Exhibit G.

10.    CabineTec executed a Verified Stipulation and Confession of Judgment

("Confession of Judgment") in that matter on May 23, 2007, wherein CabineTec consented to

and authorized entry of judgment in satisfaction of the allegations raised in that complaint, and

agreed to pay Great-West the sum of $20,000.00 which it did.  Sweet Aff. ¶ 11.  Attached as

Exhibit H is a true and correct copy of the Confession of Judgment.[4]

11.    At no time in that litigation did CabineTec allege that Great-West had failed to

perform any part of its obligations under the parties' contract.  Indeed, CabineTec proceeded to

pay Great-West under the Confession of Judgment.

12.    Great-West is informed that former CabineTec employee Mitchell Baldwin was a

participant in the CabineTec health plan, and that he alleges he obtained medical treatment from

between March 9, 2005 through May 2, 2005 at UUHC.  Sweet Aff. ¶ 12; CabineTec' Cross

Claim ¶ 12.  Great-West did not receive any claim related to Baldwin from either UUHC or URN

until on or about May 30, 2006.  Sweet Aff. ¶ 12.  Since the ASA and Excess Loss Policy had

---

[4] Great-West hereby requests that the Court take judicial notice of Exhibits G and H hereto
pursuant to Rule 201 of the Federal Rules of Evidence.  Specifically, Great-West requests that
the Court take judicial notice of the Complaint and Verified Stipulation and Confession of
Judgment executed by CabineTec in Nevada District Court Case No. A539144.  These
documents are both judicial related documents, public records, and easily verifiable, such that
judicial notice is appropriate.  *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172
(10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take judicial notice of
proceedings in other courts, both within and without the federal judicial system, if those
proceedings have a direct relation to matters at issue."); *Pace v. Swerdlow*, 519 F.3d 1067, 1073
(10th Cir. 2008) (taking judicial notice of state court documents); *Strand v. U.S.*, 675 F.Supp.
1283, 1289 (D. Utah 1987) (taking judicial notice of witness testimony, memoranda, and other
documents in various court files); *accord Moore v. Utah Technical College*, 727 P.2d 634 (Utah
1986).

both expired prior to that time and URN had not timely sent the claim to Great-West, Great-West was not obligated to process the claim. *Id.*

## III.    LEGAL ANALYSIS

### A.    The Present Motion is Proper

When a complaint, or in this case a cross-claim, fails to state a claim upon which relief may be granted the complaint may be dismissed as to that party. F.R.C.P Rule 12(b)(6). "In ruling on a motion to dismiss under FRCP 12(b)(6), a court must determine whether the factual allegations in the complaint, if true, would entitle the plaintiff to a legal remedy." *M.A.C. v. Betit*, 284 F.Supp.2d 1298, 1304 (D. Utah 2003). "The movant bears the initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element." *Winkel v. Kennecott Holdings Corp.*, 48 F.Supp.2d 1294, 1299 (D.Utah 1999). Dismissal is appropriate when "the plaintiff can prove no set of facts in support of the claims that would entitle him to relief." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999). Moreover, the "pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

Documents attached or referred to within a complaint can be considered on a motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (if "a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant

may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). Consequently, the Court here may consider, without converting the motion to dismiss to a motion for summary judgment, the Administrative Services Agreement between CabineTec and Great-West, the Excess Loss Insurance Policy, and the SPD without converting the motion into one for summary judgment. *See* Cross-Claim ¶¶ 5, 6; *Oakwood Village LLC v. Alberstons, Inc.*, 104 P.3d 1226, 1231 (Utah 2004) (classic example is a court's consideration of a contract on a motion to dismiss when the complaint alleges breach of contract). Moreover, facts subject to judicial notice, such as prior court proceedings, may properly be considered in a motion to dismiss without converting the motion into one for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

Alternatively, if in ruling on a Rule 12 motion, the Court considers matters outside the pleadings, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." F.R.C.P. Rule 12; s*ee DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835 (Utah 1996). Under Rule 56, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. Rule 56. Here, while Great-West does not believe that the present motion need be converted, since dismissal is appropriate without considering additional evidence, if the Court were to convert the motion to one for summary judgment, Great-West would be entitled to summary judgment as there are no genuine issues of fact and Great-West is entitled to judgment as a matter of law.

**B.      ERISA Preempts CabineTec's Claims**

Here, in essence, CabineTec's claims are for payment of benefits under the ASA and Excess Loss Policy—plans which are ERISA covered plans.  CabineTec's Cross-Claim ¶¶ 5, 6, 7, 10-12, and 19.  As alleged, Great-West provided claims administration and processing services for CabineTec's self-insured employee health benefit plan.  *Id*.  As a third-party claims administrator, Great-West processed claims on behalf of CabineTec's ERISA plan.

ERISA preempts CabineTec's state law claims alleged in the Cross-Claim and provides the exclusive remedies for the resolution of benefits claims under CabineTec's policy.  29 U.S.C. § 1144(a); 29 U.S.C. § 1132(a)(1)(B); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987).  The Tenth Circuit has expressly held that ERISA completely preempts state law bad faith claims.  *Kidneigh v. UNUM Life Ins. Co. of Am.*, 345 F.3d 1182, 1188-89 (10th Cir. 2003), cert. denied, 540 U.S. 184 (2004).  The U.S. Supreme Court has held that causes of action based on alleged mishandling of medical benefits issues are subject to complete preemption and that duties imposed by state law regarding handling of coverage fall within the scope of ERISA and are preempted.  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 211 (2004).

Therefore, CabineTec's state law claims for breach of fiduciary duty and bad faith failure to settle or compromise are preempted and should be dismissed with prejudice.

**C.      CabineTec's Claims are Barred by the Doctrine of Res Judicata**

Whether res judicata "bars an action presents a question of law."  *Macris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214 (Utah 2000).  "Res judicata prevents both the relitigation of previously litigated claims between two parties and the 'relitigation of issues that have been

decided, through the causes of action or claims for relief are not the same." In re A.C.M. v.

A.N., 2009 UT 30; 2009 Utah LEXIS 120 **12 (Utah 2009). Whether a claim is precluded

from relitigation depends on a three-part test:

> First, both cases must involve the same parties or their privies.
> Second, the claim that is alleged to be barred must have been
> presented in the first suit or be one that could and should have been
> raised in the first action. Third, the first suit must have resulted in
> a final judgment on the merits.

*Snyder v. Murray City Corp.*, 73 P.3d 325 (Utah 2003). "Claims or causes of action are the same

as those brought or that could have been brought in the first action if they arise from the same

operative facts, or in other words from the same transaction." *Mack v. Utah State Dept. of

Commerce*, 2009 UT 47; 2009 Utah LEXIS 158, **24.

On April 9, 2007, Great-West filed a complaint against CabineTec in the District Court of

Clark County, State of Nevada, alleging claims for breach of contract and quantum meruit

related to CabineTec's failure to pay premiums under the ASA and Excess Loss Policy, and

specifically for not paying post-termination premiums related to the Excess Loss Policy. Nevada

Complaint, Exhibit G hereto. CabineTec executed a Verified Stipulation and Confession of

Judgment ("Confession of Judgment") in that matter on May 23, 2007, wherein CabineTec

consented to and authorized entry of judgment in satisfaction of the allegations raised in that

complaint, and agreed to pay Great-West the sum of $20,000.00 which it did. Confession of

Judgment, Exhibit H hereto. Significantly, CabineTec admitted therein, that "This Verified

Stipulation and Confession of Judgment is for a Debt actually and justly owing, is unconditional

and irrevocable by CabineTec, and is binding upon all successors and assigns of CabineTec."

Confession of Judgment at ¶ 7. In addition, CabineTec understood "that by executing this

Verified Stipulation and Confession of Judgment substantial rights may be compromised and/or waived in their entirety." Confession of Judgment at ¶ 8.

All of the underlying facts forming the basis for CabineTec's Cross-Claim existed at the time Great-West filed the Nevada Complaint. Specifically, CabineTec's employee, Mitchell Baldwin had obtained the relevant medical treatment in March through May 2005. CabineTec knew, or had it within their control to know whether Mr. Baldwin or his medical providers had any outstanding claims at that time. However, instead of raising the present breach of contract, breach of fiduciary duty, and bad faith failure to settle claims, CabineTec confessed judgment that it had terminated the ASA, breached its agreement with Great-West to pay post-termination premiums to obtain Excess Loss Policy coverage, and admitted that it owed Great-West premiums. CabineTec's claims were compulsory counterclaims in the Nevada matter and CabineTec failed to assert the claims—claims that could have and should have been raised.[5] As to the third element, CabineTec's Confession of Judgment adjudicates that Great-West did not breach its contracts with CabineTec or fail in any of its duties to CabineTec.

Accordingly, each of CabineTec's causes of action in the Cross-Claim are barred by the doctrine of res judicata, as the Nevada Complaint was between the same parties, was finally adjudicated, and the claims could have and should have been raised therein. Dismissal of the Cross-Claim with prejudice is warranted.

---

[5] Had CabineTec not terminated the ASA or if it had paid the required post-termination premiums to maintain the Excess Loss Policy, then perhaps its claims (and those of the University of Utah) would have merit. However, as CabineTec confessed judgment in that it failed to make payments, the issue is finally and forever resolved that CabineTec terminated the ASA and lost post-termination coverage under the Excess Loss Policy for failing to make proper premium payments.

**D.    CabineTec's Cross-Claim Fails to State Any Valid Claims**

Even if the Court were to determine CabineTec's Cross-Claim somehow survives ERISA preemption and/or res judicata, each of the purported causes of action fail on their own terms when the allegations and relevant contract provisions, which are part of the pleadings, are considered.

**1.    The Breach of Contract Claim Fails**

CabineTec's first cause of action for breach of contract alleges that Great-West contracted to provide administration of benefits/claims processing according to the ASA for CabineTec and to provide excess loss coverage pursuant to the Excess Loss Policy.  CabineTec's Cross-Claim ¶¶ 5, 7, 8, 11.  CabineTec then alleges that "Great-West breached its contract with CabineTec by failing to process [Plaintiff's] claims in a timely manner and otherwise failing to reimburse CabineTec for the amount paid . . . in excess of $40,000."  CabineTec's Cross-Claim ¶ 13.

CabineTec's claim fails for several reasons.  First, CabineTec has not made any payments to Plaintiff, let alone the required $40,000 payment.  Plaintiff alleges that it has only been reimbursed $2,861.89.  Plaintiff's Amended Complaint, ¶ 21.  CabineTec has never alleged that it made any payments to Plaintiff.  As CabineTec has not made a $40,000 payment, no "excess" loss obligations could have arisen as against Great-West and the claim fails based on failure of conditions precedent.  Moreover, as the only injury CabineTec claims is that Great-West has failed to "reimburse CabineTec for the amount paid . . . in excess of $40,000," the claim must fail since there is nothing to "reimburse" CabineTec for at this time.  As CabineTec has not paid anything to Plaintiff, there is no injury, and the claim should be dismissed.

Second, the ASA was terminated by CabineTec and the Excess Loss Policy was terminated due to CabineTec's non-payment of premiums and claims prior to the time when Mr. Baldwin's claims were processed. At CabineTec's request, the ASA was terminated on March 1, 2006. Exhibit D hereto. CabineTec requested terminal run-out of claims for services performed prior to March 1, 2006 and the Excess Loss Policy came into effect. *Id.* While Great-West agreed to the continued coverage, CabineTec immediately defaulted on its obligations when it failed to pay premiums and fees. Great-West's obligations under the ASA and Excess Loss Policy were immediately terminated at that time. ASA, Exhibit A hereto, § 11D; Excess Loss Policy, Exhibit B hereto, at 9-10. Great-West informed CabineTec of its non-payment and the termination of coverage on April 18, 2006. Exhibit F hereto. As noted above, Great-West filed the Nevada Complaint alleging the above default and termination of obligations. Exhibit G hereto. CabineTec admitted, through the Confession of Judgment, that Great-West's version of the termination of coverage based on lack of payment of premiums was correct and proceeded to pay Great-West for past due premiums. Exhibit H hereto. Consequently, based on the Confession of Judgment, CabineTec's current breach of contract claim fails as a matter of law since CabineTec terminated the ASA and the Excess Loss Policy was terminated for non-payment prior to any issues with Mr. Baldwin arising, and therefore, CabineTec was left to address any potential claims of Mr. Baldwin on its own.

Third, the Limitations and Exclusions of Coverage Article in the Excess Loss Policy clearly eliminates any contractual duty on the part of Great-West to pay any amounts related to Mr. Baldwin or Plaintiff's claims. Specifically, section C of that Article states:

> [A]fter the termination of this Policy, the Company will not be liable for any further payments under this Policy regardless of the

-14-

> date that the underlying benefit claim was incurred or submitted to the Company, provided that the Company has not intentionally delayed processing the claim.

Excess Loss Policy, Exhibit B hereto, at 9, Article Limitations and Exclusions of Coverage, § C.

As the ASA and Excess Loss Policy were terminated in April 2006, this provision clearly

explains that Great-West will not be liable for any payments after the termination date—

regardless of what the claim is or when the claim arose. Here, there is no allegation that Great-

West intentionally delayed the claims processing. Accordingly, the Excess Loss Policy clearly

defeats the contractual assertions made by CabineTec and fatally undermines CabineTec's

breach of contract claim.

For these various reasons, CabineTec's breach of contract claim fails and the Court

should grant the present Motion to Dismiss.

### 2. The Breach of Fiduciary Duty Claim Fails Because Great-West Was Not The Plan Fiduciary

CabineTec alleges that "Great-West owed a fiduciary duty to CabineTec in the

administration of claims presented to it." CabineTec's Cross-Claim ¶ 18. CabineTec then

alleges that Great-West breached that fiduciary duty by failing to process claims, not informing

CabineTec of claims, and by not paying claims that were due. CabineTec's Cross-Claim ¶ 19.

Based on no other facts, CabineTec asserts that such conduct constituted a breach of a fiduciary

duty by CabineTec.

In the present context between two unrelated entities (CabineTec and Great-West), the

existence of a fiduciary duty could only be imposed by contract. The ASA is absolutely clear

that CabineTec was the Plan fiduciary. That is, the ASA states: "the Contractholder

[CabineTec], who is both the fiduciary of the Plan and the Plan Administrator, hereby retains the

Company [Great-West] to provide services for the Plan in accordance to the following terms and conditions." ASA, Exhibit A hereto, at 1 (third recital paragraph). The ASA notes that the only instance in which Great-West could be deemed a fiduciary related to addressing any appeals of claims: "The Contractholder [CabineTec] agrees that the Company [Great-West] will serve as a limited fiduciary for the purpose of handling claims appeals." ASA, Exhibit A hereto, at 2, § 2.

Consequently, the express terms of the ASA defeat CabineTec's second cause of action for breach of fiduciary duty since Great-West owed no such duty to CabineTec—except in an appeal context which is not alleged here. Since no fiduciary duty existed between the parties, CabineTec's claim fails as a matter of law and should be dismissed. Moreover, the medical benefits under CabineTec's plan were self-funded, rendering CabineTec "fully responsible for the self-funded benefits." SPD, Exhibit C hereto, at 5-6. "Great-West processes claims and provides other services to the Employer related to the self-funded benefits. Great-West does not insure or guarantee the self-funded benefits." *Id*. As a result, since medical benefits were self-funded by CabineTec, Great-West owed no duty to pay claims as alleged herein and the claim fails for this reason as well.

> **3.**     **Since CabineTec Did Not Purchase "Insurance" from Great-West and the Benefits at Issue were Self-Funded, CabineTec's Third Claim Also Fails**

CabineTec's third claim, for "Bad Faith Failure to Settle or Compromise" is erroneously based on the premise that CabineTec purchased "insurance" from Great-West for medical claims. Indeed, CabineTec alleges that Great-West owes a duty "to act in good faith and to settle or compromise claims brought against CabineTec and otherwise answer the ends and purposes of the agreement between CabineTec and Great-West, specifically including but not limited to

protecting CabineTec from claims such as the one brought by Plaintiff herein."  CabineTec's

Cross-Claim, ¶ 23.  CabineTec further alleges that Great-West has acted in bad faith, or at least

not in good faith, in failing to settle or compromise Plaintiff's claim for the protection of

CabineTec.  *Id.*  ¶ 24.

Again, the specific terms of the agreement between Great-West and CabineTec fatally

undermine CabineTec's claim.  The SPD provides a clear description of the parties' roles with

respect to the Plan and demonstrates that CabineTec did not purchase insurance from Great-West

as alleged:

> **INTRODUCTION**
>
> - **About this Plan**
>
> CABINETEC, INC. (the "Employer") has established an
> Employee Welfare Benefit Plan within the meaning of the
> Employee Retirement Income Security Act of 1974 ("ERISA")
>
> . . .
>
> Some of the benefits that form a part of the Plan and are described
> in this booklet are fully insured by Great-West Life & Annuity
> (referred to as Great-West or Company in this Booklet), 8505 E.
> Orchard Road, Greenwood Village, Colorado 80111.  Others are
> self funded by the Employer.
>
> . . .
>
> Insured Benefits
>
> Life and AD&D Insurance
>
> . . .
>
> Self-Funded Benefits
>
> Medical and Prescription Drug Benefits

> The Plan Administrator has the discretionary authority to control and manage the operation and administration of the Employer's self-funded Plan . . . .
>
> . . .
>
> The Employer is fully responsible for the self-funded benefits. Great-West processes claims and provides other services to the Employer related to the self-funded benefits. Great-West does not insure or guarantee the self-funded benefits.

SPD, Exhibit C hereto, at 5-6.

This language establishes that the medical benefits under CabineTec's plan were self-funded, meaning that CabineTec remained fully responsible for such benefits and did not purchase insurance from Great-West with respect to medical benefits. Instead, CabineTec remained fully responsible for such benefits. Moreover, Great-West did not agree to insure the Plan, defend or hold CabineTec harmless from such claims, or otherwise defend or protect CabineTec from medical benefits claims. Consequently, Great-West has no duty whatsoever to settle or compromise medical benefits claims arising from CabineTec's employees or Plan members. Therefore, CabineTec's claim fails as a matter of law and should be dismissed.

## IV.    CONCLUSION

Based on the foregoing, Great-West respectfully requests that the Court grant its Motion to Dismiss and dismiss the Cross-Claim of CabineTec, in its entirety, with prejudice.

Dated:  September 11, 2009                HOLLAND & HART LLP


/S/ Bryan K. Benard_____
Bryan K. Benard
Attorneys for Defendant, Cross-Complainant and
Third-Party Plaintiff Great-West Life and
Annuity Insurance Company

### CERTIFICATE OF SERVICE

I hereby certify that on 9/11/2009, I electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Julie K. Ewing
julieewing@utah.gov

Brent C. McDonald
bmcdonald@snowjensen.com,brentm77@gmail.com

Lewis P. Reece
lreece@snowjensen.com,bsevernak@snowjensen.com

Scott A. Hagen
shagen@rqn.com,dvandenakker@rqn.com,docket@rqn.com

s/ Bryan K. Benard
HOLLAND & HART LLP
60 E. South Temple, Suite 2000
Salt Lake City, Utah  84111-1031
Phone: (801) 595-7833
Fax: (801) 364-9124
bbenard@hollandhart.com

ATTORNEYS FOR DEFENDANT, CROSS-COMPLAINANT AND THIRD-PARTY PLAINTIFF

4602800_1.DOC

-19-

Exhibit List

Exhibit A:     CabineTec/Great-West Administrative Services Agreement, including appendices A, C and D ("ASA"), dated March 10, 2004

Exhibit B:     CabineTec/Great-West Excess Loss Insurance Policy, dated March 10, 2004

Exhibit C:     CabineTec Summary Plan Description

Exhibit D:     Termination Letter from CabineTec to Great-West, dated February 14, 2006

Exhibit E:     Letter from Great-West to CabineTec, dated February 15, 2006

Exhibit F:     Letter from Great-West to CabineTec, dated April 18, 2006

Exhibit G:     Nevada Complaint, dated April 9, 2007

Exhibit H:     Confession of Judgment, dated May 23, 2007